TERESA L. CONNOLLY LUCAS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, RespondentLucas v. CommissionerDocket No. 37576-84United States Tax CourtT.C. Memo 1989-320; 1989 Tax Ct. Memo LEXIS 320; 57 T.C.M. (CCH) 838; T.C.M. (RIA) 89320; June 28, 1989Richard G. Danner, Jr., for the petitioner. Nancy B. Herbert, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined a deficiency in the Federal income tax of Donald J. Connolly and Teresa L. Connolly (now Teresa L. Connolly Lucas) for the calendar year 1980 in the amount of $ 37,993. By amendment to answer, respondent alleged that petitioner, by virtue of a valuation overstatement, was liable for the addition to tax under section 6621(c). 1 Petitioner conceded that she could not establish error in respondent's determination of the deficiency. She did not concede the addition to tax under section 6621(c) affirmatively alleged by respondent. The issues for decision are whether petitioner filed a joint Federal income tax return for the year 1980 with her former husband, Donald J. Connolly, and if she did, whether petitioner is entitled to be relieved of the deficiencies in income tax and additions*322 thereto under the provisions of section 6013(e). FINDINGS OF FACT Petitioner Teresa L. Connolly Lucas resided in Dallas, Texas, at the time the petition in this case was filed. In 1956 petitioner married Donald J. Connolly. They were divorced in 1982. After petitioner's divorce she resumed her maiden name of Lucas. During her marriage, petitioner used the name Teresa L. Connolly. Petitioner is a high school graduate and received an associate degree in nursing. Thereafter, she received two years further training and became a registered nurse. During her marriage to Donald J. Connolly, petitioner worked outside of her home for only approximately two years and the last year in which she did any work outside her home was 1977. From the time they were married through the year 1979, petitioner and her then husband had filed joint Federal income tax returns even though in most of the years petitioner had no income. Petitioner had signed all of the joint returns which she and her then husband filed. He would take the information with respect to the returns to*323 a tax preparer and when the returns were prepared would bring them to her and she would look over them and sign them. Petitioner and her husband maintained a joint checking account on which petitioner wrote checks for payment of household bills and similar items. In addition, Mr. Connolly maintained a separate checking account. Mr. Connolly did not discuss his investments with petitioner. During April and May of 1981, petitioner and her then husband were experiencing marital difficulties. On June 1, 1981, they were separated. Neither Mr. Connolly nor anyone else ever brought an income tax return for the year 1980 to petitioner to look over and sign. However, for that year a return was filed in the name Donald J. and Teresa L. Connolly showing their then address in Montville, New Jersey. This return had Mr. Connolly's signature and the signature of the return preparer on it and in the place for spouse's signature was written "Teresa L. Connolly." This writing was not petitioner's signature and petitioner did not sign the return or authorize Mr. Connolly or anyone else to sign it on her behalf. In fact, petitioner never saw the original return and never saw a copy of the*324 return until after she and Mr. Connolly were separated and she was looking for some papers to take to the lawyer who was representing her in connection with the separation and divorce. Mr. Connolly had a desk in the marital home in which he kept certain financial or business records. Petitioner never went into Mr. Connolly's desk at the home until, at the request of her lawyer, she was looking for certain papers to use in preparing for a divorce proceeding. In looking for these papers, petitioner found a copy of the 1980 income tax return filed in the names Donald J. and Teresa L. Connolly. This was the first time she had seen this document. The return filed for 1980 reported salaries and wages of $ 125,059. This was all earnings of Mr. Connolly. It reported dividend income of $ 1,061, less the exclusion of $ 200, from "Fidelity Daily." After the words "Fidelity Daily" appeared in parentheses the letter, J. Petitioner knew that Mr. Connolly had a money market account at Fidelity Daily, but if she had signature authority on the account, she was unaware of that fact. All she knew about the account was that such an account existed at Fidelity Daily. On the return filed in the*325 name of Donald J. and Teresa L. Connolly an investment tax credit of $ 30,000 was claimed, a loss of $ 13,059 was claimed on a Schedule C attached to the return, and a refund of tax withheld of $ 21,728 was claimed. Petitioner did not know of the claimed Schedule C loss or the claimed investment tax credit or that Mr. Connolly had made an investment in Sagittarius Recording Company until after their separation in June 1981 when she found the copy of the tax return. Petitioner has no knowledge of what happened to the refund of tax for 1980 which was claimed on the tax return filed. Under date of June 18, 1982, petitioner and Mr. Connolly entered into a property settlement agreement. Each party was represented by counsel. Petitioner's counsel prepared the first draft of the agreement which contained a number of mutually agreed to changes. The agreement as finally adopted by the parties contained many handwritten changes including most of paragraph 9(b). Paragraphs 5, 7A and 9(b) of this agreement provide in part as follows: 5. TAXES:* * * (b) The parties have, in the past, filed joint income tax returns and, at the option of WIFE (such option to be exercised within*326 15 days of demand therefor) will also file a joint return for 1981. HUSBAND shall promptly notify the WIFE of any deficiency assessment on any such joint returns. Subject to the following indemnification, the HUSBAND shall have the sole right to contest, settle, compromise or otherwise resolve any such defiency [sic] assessment including specifically the matter of the contingent tax liability described in Paragraph 9(b), and the WIFE agrees to join in the execution of such powers of attorney, waiver of the statute of limitations, consents, authorizations and other documents relating to the contest settlement or payment of such tax deficiency. Except as set forth in Paragraph 7A(5)(c), he will pay the amount ultimately determined to be due, together with interest and penalties thereon, if any, as well as all accounting and legal expenses that may be incurred in the event of any contest. He shall indemnify and hold WIFE harmless from any claim, damage or expense arising out of any such deficiency. * * * 7. EQUITABLE DISTRIBUTION:* * * A. EQUITABLE DISTRIBUTION OF MARITAL HOME:* * * (5) The proceeds of sale of the marital home shall be distributed as follows: *327 * * * (c) Fifty (50%) percent of the parties' 1981 tax liability over and above the amounts already paid and withheld, in the approximate amount of $ 17,000.00, it being understood that the parties contemplate that the total amount will be between FIVE THOUSAND ($ 5,000.00) DOLLARS and TWELVE THOUSAND ($ 12,000.00) DOLLARS; provided, however, that HUSBAND shall be solely responsible for payment of any interest and penalties regarding said income tax obligation and shall indemnify and hold WIFE harmless from [balance of sentence illegible]. (d) Remainder to WIFE. * * * 9. DEBTS:* * * (b) I.R.S. Tax Liability:(1) It is the understanding of the parties that there is a contingent liability to the Internal Revenue Service on account of the parties' 1980 Federal income tax return in the approximate amount of THIRTY-FIVE THOUSAND ($ 35,000.00) DOLLARS. The parties agree that HUSBAND shall be solely responsible for such tax liability, penalties and interest thereon and any expenses related to the contest or settlement thereof and shall indemnify and hold WIFE harmless from any obligation thereon and for any costs and reasonable attorneys' fees in connection therewith. *328 (2) If the tax liability becomes due and payable before the closing of the marital home and any of the sale proceeds are required to be used to discharge same, or if for any reason the sale proceeds are attached at any future date, or WIFE is required to use any of the sale proceeds or any other of her own funds to satisfy any of the aforesaid tax liability, the HUSBAND shall be obligated to pay to WIFE the amount of the proceeds or any other of her funds required to discharge the tax liability as herein provided. (3) If the HUSBAND shall become obligated to reimburse [sic] the WIFE by reason of the payment of the tax liability, the HUSBAND shall in good faith liquidate all possible assets to pay to WIFE the amount due and owing to her. (4) HUSBAND hereby grants to the ESCROW AGENT (hereafter named) to secure the payment of such potential tax obligation: (a) An assignment of: 1. His right to the principal from the second Vickery deed, further identified as having been made by Robin & Dora Vickery covering property in Herndon, VA, which deed is presently unrecorded, and shall deliver to such escrow agent the original unrecorded deed which shall be recorded with such assignment; *329 and such other documents reasonably required to effectuate the purpose of this provision. 9(b)4(A) The within collateral and documents related thereto shall be in favor of Barbara K. Hartman, designated successor or her who shall be an attorney of as escrow agent, and held by her (or proceeds thereof) subject to the following [incomplete sentence]: (1) If the IRS tax liability has not been adjudicated, the proceeds of such collateral shall be held in an interest bearing account to be used to the extent available, including the whole, in payments of such potential tax liability. Any surplus of money after payment of such tax lien shall be returned to Husband; (2) If there is an adjudication by the IRS that there is no tax liability, the collateral shall be discharged and/or proceeds thereof returned to Husband; or (3) If there is an IRS tax liability which was discharged in whole or part out of the proceeds from the sale of the marital home or any other assets of the wife, the collateral shall be held for the benefit of wife as security for the repayment of the debt due her from husband on the proceeds paid to wife in reduction of the debt due her from husband regarding such*330 IRS tax liability. [Reproduced literally.] Under date of January 19, 1983, petitioner wrote a letter to the "I.R.S." which stated in part as follows: Dear I.R.S.: I have just received a "Request for Information about Tax Form" dated 1-14-83 addressed to: Donald J. & Teresa L. Connolly - identifying #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. I wish to inform you of some circumstances. Mr. Connolly & I were separated on June 1, 1981 & divorced on June 18, 1982. During this period I earned no income &, as previously, survived on what he provided me from his income. In the 25 years of our marriage I was employed under 2 years, the last time in 1977 or so. We have always filed a joint return. At the time of divorce "we" were undergoing auditing of the 1980 Income Tax Return, which-incidentally-I did not sign. Under the terms of the divorce agreement, Mr. Connolly assumed all liability for any income tax & penalties due for 1980 Income Tax. * * * I have no awareness of the status of the 1980 Income Tax & no knowledge whatsoever of the 1981 Income Tax Return. Just one of his failures to comply with terms of divorce. It is my personal desire to be a law-abiding citizen, to clear myself of just*331 liabilities & would appreciate knowing specifically of what these consist. Perhaps you can relay to me what information you may glean from him * * *. [Reproduced literally.] Under date of May 28, 1984, petitioner wrote a letter to the Internal Revenue Service which stated in part as follows: This letter is to acknowledge receipt of correspondence dated May 18, 1984 regarding the Examination Report of the jointly filed 1980 income tax return for Donald J. D. and Teresa L. Connolly; Soc. Sec. #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. I endeavored to contact you by phone last week unsuccessfully, as I am not quite sure of the appropriate manner by which to handle this matter. I do accept your findings and consent to your right to assessment and collection of the deficiency. However, I am reluctant to sign Form 870 or Form 1902-B which were enclosed, because I do not personally accept liability for this debt, on the grounds that according to the terms of the Property Settlement Agreement incorporated into the Final Judgement for Divorce, "Mr. Connolly is solely responsible for the 1980 tax liability, penalties and interest thereon and any expenses related to the contest or settlement thereof and shall*332 indemnify and hold me harmless from any obligation thereon. . . ." I am trusting that what was granted me, freedom from this obligation, in the Superior Court of New Jersey will be honored by the Internal Revenue Service. In attempting to decipher the instructions for reply to your letter and its enclosures, it is not clear to me what steps I should take to fulfill my responsibility to satisfy your needs for my signature, or, in lieu of that, a request from me for an Appeals conference. I do not wish to make such a request because I have no argument as to the deficiency or its amount or its collection. What I do wish is assurance that Mr. Connolly will be held solely liable and that I am not and never will be considered liable for this obligation. Please advise me as to the correct procedure to attain such assurance. * * * [Reproduced literally.] Under date of August 12, 1984, petitioner wrote a letter to the Internal Revenue Service which stated in part as follows: This is to acknowledge receipt of the above referenced letter and its enclosures. All of which, though more detailed, is not dissimilar to correspondence from the Audit Division, P.O. Box 270, Newark, N.J.*333 01701, dated May 18, 1984. The latter named Kevin Wiggins as a contact person. Enclosed is a copy of my letter, dated May 28, 1984 to him. Please note that I have received no reply to my request for advice. I simply do not know what to do! I had no part in the earning of income during 1980; no input into the decision to disburse funds as they were; nothing to do with the completion of the income tax return; in fact, I never saw it, nor did I sign it before it was filed. Though I understand that since it was filed as a joint return and that I could possibly be held liable for the deviciency; I feel no moral obligation to acknowledge such. The terminoloby of Forms 4089 and 1902*B seems to imply that my signature could be interpreted as my agreeing to liability for this deficiency; which I do not. This opinion is enforced by the Property Settlement Agreement incorporated into the Final Judgment of Divorce on June 18, 1982, in the Superior Court of New Jersey, Chancery Division, Morris County; and by the fact that several months ago I was told by someone in your office that the IRS would uphold the Divorce Decree. * * * [Reproduced literally.] The "above referenced letter" *334 referred to in petitioner's August 12, 1984, letter is the notice of deficiency dated July 30, 1984, from which the petition in this case was filed. Petitioner received no written replies to any one of her three letters to the Internal Revenue Service. On the return filed in the name of Donald J. and Teresa L. Connolly filing status 2, "married filing joint return (even if only one had income)," was checked. Under exemption 6a. and b. "yourself" and "spouse" were checked. Five exemptions for dependent children were claimed, making a total of 7 exemptions claimed. Petitioner did not file a separate income tax return for the calendar year 1980. She had no income for that year. Respondent in his notice of deficiency addressed to Mr. Donald J. Connolly and Mrs. Teresa L. Connolly dated July 30, 1984, disallowed the loss claimed on Schedule C with the following explanation: It is determined that the claimed deductions for lease expense, car and truck expenses, legal and professional services, office supplies, telephone, travel and entertainment, tolls, parking, taxi and M.V. fees in the amount of $ 13,059.00 are disallowed since you have not established that the activity was*335 engaged in for profit, constituted a trade or business, or involved property held for the production of income. There were several additional reasons given in the notice of deficiency for disallowance of these claimed trade and business expenses. The claimed $ 30,000 investment tax credit was disallowed with the following explanation: "You have not established that the activity was engaged in for profit, constituted a trade or business, or involved property held for the production of income." In the notice of deficiency 7 additional reasons were stated for disallowing the claimed investment tax credit. Certain other minor adjustments were made in the notice of deficiency. Mr. Connolly did not file a petition with the Tax Court and respondent has assessed the deficiency determined in the notice against Mr. Connolly and has collected a portion of that deficiency. In the original petition filed on behalf of petitioner which was signed by her attorney, error was assigned with respect to all the adjustments made in the notice of deficiency and facts stated purporting to support the allegations of error. Also alleged in that petition was a paraphrase of the provisions in section*336 9(b) of the property settlement agreement with respect to Mr. Connolly's agreeing to be responsible for all 1980 Federal income taxes. On August 31, 1988, pursuant to leave granted by the Court, petitioner filed an amended petition in which the same errors alleged in the original petition were alleged and further allegations were made that since petitioner did not sign the joint Federal income tax return she is not liable for any taxes due thereon and that she is an innocent spouse within the meaning of section 6013(e) of the Internal Revenue Code. OPINION Section 6013(a) provides that a husband and wife may make a single joint return of income even though one of the spouses has neither gross income nor deductions. Section 1.6013-1(a)(2), Income Tax Regs., provides that a joint return of a husband and wife, if not made by an agent of one or both spouses, shall be signed by both spouses. It further provides that the provisions of section 1.6012-(a)(5), Income Tax Regs., relating to returns made by an agent shall apply where one spouse signs a return for the other or where a third party signs a return as agent for one or both*337 spouses. Section 1.6012-(a)(5), Income Tax Regs., provides detailed rules for a return being made by an agent and specifically provides that whenever a return is made by an agent it shall be accompanied by a power of attorney authorizing him to represent his principal in making, executing and filing the return. There is a provision that where one spouse is physically unable by reason of disease or injury to sign a joint return the other spouse may, with the oral consent of the one who is incapacitated, sign the incapacitated spouse's name in the proper place on the return followed by the words "by husband (or wife)." It is clear from the record in this case that petitioner did not sign the joint return filed in her and her then husband's names. It is equally clear that she did not authorize anyone else to sign the return on her behalf. At the trial, respondent questioned the testimony of petitioner that she did not sign the return and did not authorize anyone else to sign it on her behalf. Respondent also questioned the testimony of the expert witness offered by petitioner that the signature on the return was not petitioner's. At respondent's request and upon representation*338 of his counsel that respondent had been furnished examples of petitioner's signature too late to obtain the services of a handwriting expert, the record was held open to afford respondent the opportunity to obtain a handwriting expert and to take the deposition of that expert. Counsel for respondent before the time for taking the deposition had expired, informed the Court that a handwriting expert engaged by respondent had compared the samples of handwriting of petitioner with the handwriting of her name on the return and that the expert supported the testimony of petitioner and petitioner's expert that petitioner's name as signed to the return was not in her handwriting. On this basis, respondent conceded that petitioner had not signed the document which had been filed as a joint return of petitioner and her former husband. However, respondent argues that the evidence of record shows that petitioner intended to file a joint return for the year 1980 with her husband and for this reason the return should be considered a joint return and petitioner should be held liable for the deficiency in tax determined in the notice of deficiency. It is specifically provided in section 6013(d)(3)*339 that if a joint return is made the liability with respect to the tax shall be joint and several. Section 6013(e) provides for a spouse's being relieved of liability on a joint return under certain circumstances. However, petitioner's primary position in this case is that she did not file a joint return with her then husband for the year 1980. She points out that she did not sign the return and states that she did not intend to join in making a joint return for 1980 and, since she did not file a joint return with her then husband, she is not liable for the deficiency determined with respect to that return. Respondent argues that the mere failure of a spouse to sign a return which is stated to be a joint return, does not in and of itself cause the return not to be a joint return. It is respondent's position that petitioner intended the return filed by her then husband to be a joint return and, therefore, it is a joint return even though she did not sign it. The primary factor to be considered in determining whether a document entitled as a joint return but not signed by one spouse is a joint return, is the intent of that spouse who did not sign the return. If the return was intended*340 as a joint return, the failure of one spouse to sign does not cause the return not to be treated as a joint return. Federbush v. Commissioner,34 T.C. 740 (1960), affd. per curiam 325 F.2d 1 (2d Cir. 1963); Howell v. Commissioner,10 T.C. 859 (1948), affd. per curiam 175 F.2d 240 (6th Cir. 1949). Petitioner in this case testified that she knew nothing about the filing of the return which was entitled as a joint return and that she did not authorize either her husband or anyone else to file the return or sign the return on her behalf. In fact, she testified that she never saw the original 1980 return and did not see a copy of the 1980 return until around June 1, 1981, when she was accumulating information in connection with her divorce proceeding. She further testified that at no time was it her intent to make the return a joint return for 1980. In fact, she testified that had the return been brought to her showing the deduction and credit with respect to the master tape recording, she would not have signed it and that it is her conclusion that this is the reason her husband did not bring the 1980 return to her for her*341 signature. This testimony is speculation or opinion and does not substitute for the objective facts. The objective factors of record are determinative of a spouse's intent or lack of intent to file a joint return rather than the subjective speculation of the spouse that did not sign the return. Federbush v. Commissioner,34 T.C. at 756. As pointed out in the Federbush case one of the objective factors to be considered is whether the return contains income and deduction items of the non-signing spouse. Other factors to be considered are the existence of any reason for the spouses not to file a joint return and the prior and subsequent history of filing joint or separate returns by the spouses. Estate of Campbell v. Commissioner,56 T.C. 1, 13 (1971). A further factor to be considered is the actions of the spouse who did not sign the return subsequent to its filing. Heim v. Commissioner,27 T.C. 270, 274 (1956), affd. 251 F.2d 44 (8th Cir. 1958). In this case, the fact that petitioner did not file a separate return is not helpful. She had no income in the year 1980 and, therefore, was not obligated to file a*342 return. Respondent attempts to argue that she did have some dividend income from the Fidelity Daily money market account. Respondent's argument is based on the J in parentheses on the Schedule B reporting a dividend in the amount of $ 1,061. However, petitioner's testimony is that she had no knowledge of being put as a joint owner on this account. Petitioner testified that the only knowledge she had of this account was that her husband had such an account. On the basis of this record, we conclude that the account was not a joint account on which she would be entitled to any portion of the dividends. She testified she had no income during the year 1980 and the record as a whole supports her testimony. For this reason her failure to file a separate return is not indicative of whether the return filed in the joint names of petitioner and her husband was intended as a joint return. In this case there did exist some reason for petitioner not to file a joint return with her husband for 1980 because of the marital situation in April 1981 at the time the return was filed. However, domestic difficulties do not in and of themselves prove that a spouse without income of her own did*343 not intend a return she did not sign to be a joint return with her husband. Petitioner had nothing to do with the preparation of the return for 1980 and in fact was unaware of the return having been filed until she found a copy of it around the first of June 1981. Under this factual situation, the primary objective factors to be considered are petitioner's actions regarding the return subsequent to its filing. Certainly, prior to her becoming aware of a document entitled a joint return having been filed, petitioner had not demonstrated any intent one way or the other to join in a joint return with her husband. We have considered the various documents written by petitioner subsequent to her discovery of the copy of the document entitled as a joint return with her husband as well as petitioner's testimony. Respondent argues that the divorce agreement initially drafted by petitioner's attorney, indicates that petitioner recognizes the 1980 return as a joint return. First, respondent points to the fact that under that agreement she had the option to file a joint return with her former husband for the year 1981 and that she agreed to pay a portion of the 1981 tax in excess of the*344 amount that had been withheld from her husband's salary. Respondent argues that these facts are an effective recognition of her liability on the 1980 return. We do not interpret this agreement in the same manner as respondent. Petitioner did not agree to file a joint return for 1981, but agreed that at her option she would be entitled to file such a return with her former husband for the year 1981. The portion of the tax that petitioner was to pay for 1981 was to be a part of what would otherwise be distributed to her from the sale of the marital home. The fact that she reserved the option not to file a joint return for 1981 is more indicative of a disavowal of the 1980 return as a joint return than it is an acceptance of it as a joint return. Respondent next points to the provisions in section 9(b) of the property settlement agreement, particularly the statement that "it is the understanding of the parties that there is a contingent liability to the Internal Revenue Service on account of the parties' 1980 Federal income tax return in the approximate amount of THIRTY-FIVE THOUSAND DOLLARS ($ 35,000)." The paragraph then goes on to state that the parties agree that the husband*345 shall be solely responsible for such tax liability, penalties and interest thereon and any expenses related to the contest or settlement thereof. Although this statement is a recognition that there might be some liability on petitioner or at least some attempted assertion of liability against her by the Internal Revenue Service, the agreement is that the husband will be solely responsible for the 1980 tax deficiency, if any. We do not view the statements in the property settlement agreement as dispositive of the issue of whether petitioner intended to accept the 1980 return filed in her name and her husband's name jointly as a joint return. Respondent next points to the various letters that petitioner wrote to the Internal Revenue Service. Certainly in these letters there is reference to the liability for a deficiency in 1980 tax. However, in our view, the overall import of the statements in the letters is that petitioner did not sign the 1980 return, refuses to recognize that she has any liability in connection with any deficiency in tax on that return, and is seeking information from the Internal Revenue Service as to the best way to proceed so that she has no liability for*346 the 1980 tax deficiency. In fact, in the first letter she wrote in May 1983, she stated that she had not signed the return and with respect to liability for the tax due thereon stated she "would appreciate knowing specifically of what these consist." Since she called attention to the fact that she had not signed the 1980 return and to the fact that her former husband had assumed all liability for any 1980 income taxes, it would appear that she was attempting to deny any intent for the 1980 return to be a joint return. Certainly her thoughts are not articulated as well as they might have been had she been specifically informed that she would not be liable for any portion of the 1980 tax deficiency if she had not filed a joint return for that year with her husband. She testified that she told her divorce lawyer that she had not signed the 1980 return, but got the impression from her divorce attorney that the Internal Revenue Service might nevertheless attempt to hold her liable for a deficiency for that year and she should therefore be protected from such possible liability in the divorce agreement. Petitioner testified that she never received a reply to her January 19, 1983 letter*347 requesting information from the Internal Revenue Service as to what liability she might have for the 1980 taxes where she had not signed the return. In the letter of May 28, 1984, which petitioner wrote to the Internal Revenue Service after receiving a copy of the "Examination Report of the jointly filed 1980 income tax return for Donald J. and Teresa L. Connolly, Soc. Sec. #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," petitioner stated that she accepted the findings and consented to the Internal Revenue Service's right to assessment and collection of the deficiency, but was reluctant to sign the Form 870 or Form 1902-B which were enclosed because "I do not personally accept liability for this debt, on the grounds that according to the terms of the Property Settlement Agreement incorporated into the Final Judgment for Divorce" her husband was solely responsible for the 1980 tax liability, penalties and interest and related expenses. In this letter, she further said that in attempting to decipher the instructions for reply to the letter and its enclosures it was not clear to her what steps she should take to fulfill the responsibility for need for her signature, since she wished to have assurance that her former*348 husband would be held solely liable and that she would never be considered liable for the obligation. Petitioner did not receive a written reply to this letter. Again, on August 12, 1984, petitioner wrote a letter to the Internal Revenue Service acknowledging receipt of the notice of deficiency addressed jointly to her and her former husband. In this letter she referred to the fact that she had requested information from the Internal Revenue Service and had received no reply to her request for advice. She stated, "I simply do not know what to do!" She referred to the fact that she had no part in earning income in 1980, no input into the decision to disburse funds, nothing to do with the completion of the income tax return, and in fact, never saw it, nor did she sign it before it was filed. She did say that she understood that since the return had been filed as a joint return that she "could possibly be held liable for the deficiency." She stated, however, that she felt no moral obligation to acknowledge the deficiency and would not sign the enclosed documents since they seem to imply that she was accepting such responsibility for the 1980 deficiency. Clearly, this letter indicates*349 petitioner's disavowal of the 1980 return as a joint return except where she refers to the fact that she understood that "since it was filed as a joint return" she could possibly be held liable for the deficiency. Petitioner stated that this information was, in effect, given to her at the time of the divorce proceedings in that she was told that the Internal Revenue Service might attempt to hold her liable. The August 12, 1984 letter generally disavows any intent on petitioner's part that the document filed as a joint return be considered as a joint return. Respondent finally argues that the allegations in the original petition filed in this case which basically assign as errors respondent's disallowance of the claimed deductions and investment tax credit with respect to the master tape recording are an indication that petitioner intended the return to be a joint return. Petitioner testified that she did not personally read the original petition as filed in this case by her attorney. In our view, these allegations by petitioner's attorney are not evidence of the intent of petitioner that the return be considered a joint return. We conclude under all the facts and circumstances*350 here present, petitioner did not file a joint return with her former husband for the year 1980. By the time petitioner discovered that her husband had signed her name or had it signed without authorization on a return denominated as a joint return for the year 1980 and had filed that return, she was in the process of obtaining a divorce from him. Logically and according to her testimony, she had no intention at that juncture of doing anything to accept any liability that he might have incurred for 1980 income taxes, but rather was attempting to avoid any such liability. Under these circumstances, it is illogical that she would have intended to accept the return as a joint return which would mean acceptance of a liability which otherwise she did not have. Furthermore, in our view, given her lack of precise knowledge of what she should do and the advice that she was receiving in connection with the divorce proceeding, the other documents which she wrote show a clear intention not to adopt the return filed by her former husband as a joint return. At every juncture she pointed out that she had not signed the return, did not know anything about the figures on the return and did not*351 consider herself liable for any deficiency in tax for the year 1980. The facts in this case are very similar to those in Helfrich v. Commissioner,25 T.C. 404, 407 (1955), in which we stated that: petitioner had no intention of filing a joint return and did not in fact file a joint return with Carl W. Helfrich for the year 1947. The signature "Alma L. Helfrich" on the return is not hers. Furthermore, she did not authorize anyone to sign her name to the return; she did not know the return had been filed; she did not participate in its preparation; and the first time she saw it was in the collector's office in East St. Louis in 1952. * * * In the Helfrich case we concluded that Mrs. Helfrich's execution of power of attorney and consent relating to taxes for the year involved was not an admission that the return was intended to be a joint return. We stated that such action would be the proper course for any taxpayer to take whose tax liability for a certain year is questioned by respondent whether or not any return had been filed. We further pointed out that if it was assumed that some rental income which was properly hers was included in the return, that*352 in and of itself, was not indicative of an intent to file a joint return. Here, as in the Helfrich case, petitioner did not sign her name to the return, she did not authorize anyone else to sign her name to the return, she did not know the return had been filed until after her separation from her husband, she did not participate in its preparation, she never saw the original return, and the first time she saw a copy of the return was in June 1981 when she was obtaining papers in connection with a divorce proceeding. Here, we have concluded that petitioner had no income, and therefore, no income of hers was included in the purported joint return. The various documents petitioner wrote in our view do not show an intent to make the return a joint return, but rather indicate the contrary. In Januschke v. Commissioner,48 T.C. 496 (1967), we found that the 1952 return involved was not a joint return, we pointed out that the wife never signed the return, that the making and filing of the return was never discussed with her, that she authorized no one to sign the return for her, that she had no income for the year involved, and that, therefore, she was not required*353 to file a return for that year. Relying on Helfrich v. Commissioner, supra, we concluded that the return there involved was not a joint return. In so concluding, we held that the fact that the wife executed Forms 870-AD and 433, both as an individual and as the administratrix of the estate of her deceased husband, was not a basis for concluding that she gave tacit consent to the filing of the return involved as a joint return. This case differs factually from Estate of Campbell v. Commissioner,56 T.C. 1 (1971). In concluding in that case that Mrs. Campbell intended to file a joint return with her husband for the year 1964, we pointed out that at no time during the examination of the case had she called attention to the fact that the return was not a joint return or raised any issue with respect to the fact that she had not signed the return. We noted that the Campbells continued to remain married until Mr. Campbell's death in 1967 and, that in addition to filing joint returns for 1960 through 1963, they had filed joint returns for 1965 and 1966 and that Mrs. Campbell had examined none of them before signing them. We concluded on the facts there*354 present that she had tacitly consented to the filing of a joint return. In the instant case petitioner throughout the investigation of the tax liability called attention to the fact that she had not signed the return and did not acknowledge any liability with respect to the 1980 deficiency. In Howell v. Commissioner, supra, the wife who had not signed the joint return had substantial income and deductions which were included in that return but had not filed a separate return. In the Howell case, we found that the wife had made a number of misrepresentations in regard to her income and other facts during the investigation by respondent's special agents. The facts in that case are totally different from those here present. In Heim v. Commissioner, supra, another case relied upon by respondent, the facts are likewise totally different from those present here. In that case, the wife had income, she had furnished the information with respect to her income to the accountant who prepared the joint return and had been informed by the accountant at the time he prepared the joint return including her income in it, that he had signed her name to it*355 and had sent it in. Although the taxpayer in the Heim case knew her name had been signed to the return by the accountant and that the return had been filed as a joint return, she made no effort to correct or change anything with respect to the return. It would serve no useful purpose to point out the differences in the instant case and the other cases cited and relied on by respondent. The cases are all factually distinguishable from the instant case. The fact to be determined, where the record is clear that one spouse did not sign the return, is whether that spouse, in spite of that fact, intended the return to be a joint return. Based on this record as a whole, we conclude that petitioner did not intend the 1980 return, which she did not sign, to be her joint return with her then husband. Since we have concluded that petitioner did not file a joint return with Mr. Connolly for the year 1980, we do not reach petitioner's second contention with respect to whether she should be relieved from tax for that year under section 6013(e). Since she did not file a joint return with Mr. Connolly for the year 1980 and had no income of her own in that year, there is no deficiency in*356 her tax for the year 1980. Decision will be entered for the petitioner.Footnotes1. All references are to the Internal Revenue Code of 1954 as amended and in effect for the year here in issue.↩